Submitted July 27, affirmed October 20, 2021, petition for review denied January 20, 2022 (369 Or 209)

In the Matter of S. C. E. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. S. E. S.,
*Appellant.*

Jackson County Circuit Court
20JU03645; A175284

501 P3d 556

Mother appeals from a juvenile court judgment terminating her parental rights to her daughter, S, who was four years old at the time of the termination hearing. She challenges only the court's finding that termination was in S's best interest, arguing that the court erred given the availability of a permanent guardianship. *Held*: Clear and convincing evidence established that termination was in the best interest of S.

Affirmed.

David G. Hoppe, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Mother appeals from a juvenile court judgment terminating her parental rights to her daughter, S, who was four years old at the time of the termination hearing. She challenges only the court's finding that termination was in S's best interest, arguing that the court erred given the availability of a permanent guardianship. We conclude that clear and convincing evidence establishes that termination is in the best interest of S. Accordingly, we affirm.

We review the facts *de novo*, ORS 19.415(3)(a), and recount only those facts necessary to give context to our ruling. Mother has a history of co-occurring substance abuse disorders and major depressive disorder that progressively worsened over the lifetime of this case. Her disorders cause her to become emotionally dysregulated, out of touch with reality, and neglectful of her children's needs.

Although mother consistently attends visits with S, the visits are often problematic and cause harm to S. Mother's reactions and needs dominate the visits; she becomes emotionally dysregulated and cries inconsolably in nearly every visit. The visits were reduced from twice weekly to once weekly because mother created a chaotic environment and disturbed other families' visits. She addresses topics with S, such as body functions, in ways that are not age appropriate, and her behavior has caused S to become "parentified"; S frequently feels the need to take care of mother, redirect her, or exercise extra care not to agitate or upset her. Mother regularly subjects S to unwanted hugs or cuddles to the point where staff feel the need to redirect her. S often asks to end visits early and appears withdrawn and distant following visits. Although it is clear that S loves mother and that the two are bonded, S expressed the understanding during a psychological evaluation that she is in foster care because mother does not want her, does not like her, and does not take care of her.

S is in a foster placement with her adult sister and brother-in-law, with whom she has a healthy attachment. She has expressed that she prefers to remain with them, and they are willing to adopt her. S's foster mother and mother do not have a good relationship, and the foster parents have

concerns about keeping S safe with mother involved; they are worried that, without addressing her mental health issues, mother will not abide by the boundaries set by the foster parents. During one incident, S's foster mother dropped S off for a visit, and mother charged at the foster mother's car. Mother has also stated that she does not want S living with the foster parents but offered no reasoning as to why.

In reaching the conclusion that mother was unfit and that termination of her parental rights is in S's best interest, the juvenile court emphasized the problem of mother's untreated mental health issues, noting mother's demeanor during the termination proceeding. The court explained,

"it has become quite clear to the [c]ourt for this last day and a half that everything that every person who has testified regarding demeanor and disposition of [mother] is completely accurate in their depiction. She has been completely unregulated in her emotions throughout, sobbing, sorrowful. *** I want to make that clear for the record. Those observations that were made by all the witnesses were confirmed by the conduct that was shown here in court throughout this entire proceeding. *** This is not a close case."

On appeal, mother does not challenge the juvenile court's conclusion that she is unfit or that integration of S into her home within a reasonable time is improbable. She argues only that DHS failed to prove that termination is in S's best interest. She contends that, given the availability of a permanent guardianship to ensure a stable placement while maintaining S's existing relationships, we should conclude that DHS failed to prove by clear and convincing evidence that terminating mother's parental rights serves S's best interest. DHS asserts in response that, given "mother's chaotic influence in [S's] life, their lack of a bond, and [S's] positive relationship with her foster mother," the juvenile court did not err.

ORS 419B.500 provides that "[t]he parental rights of the parents of a ward may be terminated *** only *** if the court finds it is in the best interest of the ward." That determination is focused on the needs of the child. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 166, 442 P3d 1100 (2019). The fact that a parent is unfit does not necessarily establish

that termination of their parental rights is in the child's best interest; the Supreme Court has recognized that preserving legal ties to an unfit parent may be in the child's best interest and that a permanent guardianship provides for an alternative placement that is permanent and that also preserves the child's legal relationship with a parent. *Id*. at 162; *see also Dept. of Human Services v. M. H.*, 306 Or App 150, 164, 473 P3d 1152 (2020) (rejecting the notion that permanency can only be achieved through adoption and concluding that courts "do not assume that severing a child's legal relationship with a legally unfit parent is necessary to that child's best interest without evidence"); *Dept. of Human Services v. D. F. R. M.*, 313 Or App 740, 745, 497 P3d 802 (2021) (concluding the same and finding that the record lacked clear and convincing evidence that child's best interests demand that mother's relationship with child should be legally severed). However, in this case, on *de novo* review, we conclude that the evidence is clear and convincing that termination of mother's parental rights is in S's best interest.

The record here demonstrates that mother's unregulated behavior negatively impacts S, resulting in S functioning in a parental role centering on mother's needs in a way that is unhealthy for S, even when their visits are supervised. Moreover, a permanent guardianship would be difficult to maintain in S's proposed adoptive placement with her current foster parents, given that mother is not on good terms with them and they have valid concerns that she will not respect their boundaries. The record also establishes that maintaining that placement is in S's best interest. If at some future point, mother is able to address the mental health issues that currently make it impossible for her to maintain healthier boundaries with S and her proposed adoptive parents (mother's daughter and son-in-law), perhaps contact will be in child's best interest, but that possibility is speculative on this record and keeping that option open with a permanent guardianship is not in S's best interest given mother's current capacity. Accordingly, we agree with the juvenile court that termination of mother's parental rights is in S's best interest.

Affirmed.