***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted November 9, affirmed December 7, 2022, petition for review denied February 23, 2023 (370 Or 789)

In the Matter of A. R. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. D. P.,
*Appellant.*

Jackson County Circuit Court
21JU03536; A178510

David G. Hoppe, Judge.

G. Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Mother appeals a judgment terminating her parental rights to her child, AP, in a case subject to the Indian Child Welfare Act (ICWA), 25 USC §§ 1901 - 1963. On appeal, mother raises a single assignment of error, arguing that the juvenile court erred in terminating her parental rights. More specifically, mother argues that the evidence is legally insufficient to support the juvenile court's conclusion that termination was in AP's best interests, because the permanency and stability that AP needs could have been achieved through a permanent guardianship. We affirm.

Preliminarily, we observe that, "in a termination proceeding, a parent may contend that a child's best interest can be met without termination and adoption." *Dept. of Human Services v. T. M. D.*, 365 Or 143, 162, 442 P3d 1100 (2019). If the parent does so, "the availability of another permanency plan that will advance the child's best interest, such as a permanent guardianship, may be a factor in a court's decision." *Id*.; *compare, e.g.*, *Dept. of Human Services v. D. E. P.*, 315 Or App 566, 567-71, 502 P3d 764 (2021) (concluding that termination and adoption, rather than permanent guardianship, were not in best interests of the child where the child and her siblings were all "strongly bonded" to the mother and "desired to live with" the mother, and all witnesses testified that "maintaining a relationship with mother would be beneficial" to the child), *with Dept. of Human Services v. J. S. E. S.*, 315 Or App 242, 243-45, 501 P3d 556, *rev den*, 369 Or 209 (2021) (concluding that termination and adoption were in best interests of child, and that "a permanent guardianship would be difficult to maintain" where the mother's "unregulated behavior" negatively impacted the child, and adoptive resource had "valid concerns" that, "without addressing her mental health issues, mother will not abide by the boundaries" set by adoptive parents).

But, "regardless of whether a parent takes that tack, the department's burden remains the same: The department must prove only that the parent's conduct justifies termination and that the best interest of the child will be served

by termination." *T. M. D.*, 365 Or at 162-63. Accordingly, in making the requisite showing for termination, DHS is not required to "disprove the suitability of a permanency plan other than adoption." *Id.* at 162.

On *de novo* review, ORS 19.415(3)(a), we conclude that there is evidence beyond a reasonable doubt that termination and adoption are in AP's best interests, ORS 419B.521(4) ("[T]ermination of parental rights to an Indian child must be supported by evidence beyond a reasonable doubt."); *Dept. of Human Services v. D. T. P.*, 317 Or App 810, 812, 505 P3d 1098, *rev den*, 369 Or 855 (2022) ("[T]he assessment of a child's best interest must be child-centered, taking into consideration the unique circumstances of each case.").

Mother has a mental health condition that interferes with her ability to safely parent AP. That condition has not improved over the course of several years, and mother has not indicated a desire to engage in any services. As a result, AP—who was around 18 months old at the time of the termination hearing—was removed from mother's care when she was three days old and has ever since been in foster care with the putative adoptive mother (*i.e.*, mother's cousin). Mother has expressed little interest in visiting AP, and there is little, if any, bond between AP and mother. Mother has also expressed that she does not want to bond with or parent AP or have AP in her home. And, as recently as one month before the hearing, mother refused to acknowledge that AP is her child. A permanent guardianship would be difficult to maintain, because mother's "combative" behavior is such that AP's foster mother does not want to allow visits unless her husband or others are present. Further, mother has previously agreed with the plan of adoption, and the foster parents desire to adopt AP. AP has bonded with her foster parents and their children, and all of her needs are being met in that placement. Additionally, the foster parents—who both share AP's Cherokee heritage—have expressed a willingness to expose AP to, and educate her about, that heritage. The Cherokee Nation, too, supports AP's adoption by the foster family and has opined that doing so would be in AP's best interests.

In light of the circumstances in this case, we conclude—as did the juvenile court—that termination of parental rights is in the best interests of AP.

Affirmed.