***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted January 5, affirmed  February 1, petition for review denied May 4, 2023 (371 Or 60)

In the Matter of J. J. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. R.,
*Appellant.*

Linn County Circuit Court
20JU02545; A178663 (Control)

In the Matter of C. B. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. R.,
*Appellant.*

Linn County Circuit Court
20JU02554; A178665

Rachel Kittson-MaQatish, Judge.

Kristen G. Williams filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Mother appeals from a judgment terminating her parental rights to her two children, J and C, raising six assignments of error. In her first two assignments of error, mother argues that the juvenile court erred in concluding that mother was an unfit parent to J and C based on her disability when the Department of Human Services (DHS) failed to provide services in a way that accounted for her disability. In her third through sixth assignments of error, mother contends that the juvenile court erred in ruling that termination of mother's parental rights was in J and C's best interests and erred in terminating her parental rights to J and C. We affirm.

Our review is *de novo*. ORS 419A.200(6); ORS 19.415(3). Thus, we must determine for ourselves whether the evidence is clear and convincing that mother's parental rights should be terminated. *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019).

*Mother's First Two Assignments of Error.* Having conducted our *de novo* review, we agree with the juvenile court that termination is warranted on the grounds identified by the juvenile court, including that mother's disability-related conduct renders her unfit by reason of conduct or condition that is seriously detrimental to her children,[1] and the children's integration into the mother's home is improbable within a reasonable time due to conditions not likely to change.

Mother argues that the analysis under ORS 419B.504(2), which prohibits a court from using a parent's disability, on its own, as a basis for termination—requires that the juvenile court engage in a two-step analysis: First, the court must determine that the parent's alleged mental illness renders the parent incapable of providing care properly for the child for an extended period of time. Second,

---

[1] The state argues that mother failed to preserve her arguments on unfitness. Mother argues that she preserved the argument. We need not resolve that preservation issue, however, because, assuming without deciding that mother's argument concerning unfitness is preserved, mother's argument fails on the merits.

the court may then consider if the alleged mental illness is a conduct or condition under ORS 419B.504(1). We have addressed how a court should analyze cases when a parent's mental illness is a basis for termination in *Dept. of Human Services v. N. H.*, 322 Or App 507, 520 P3d 424, *rev den*, 370 Or 694 (2022). There, we determined that a court

> "cannot consider a parent's disability alone as a basis to terminate parental rights, but it may consider evidence of a parent's *conduct* if that conduct interferes with the parent's ability to provide proper care for the child for extended periods of time. That holds true even when that conduct is based on or caused by a disability."

*Id*. at 515 (emphasis in original).

In this case, the evidence is clear and convincing that mother's conduct interfered with her ability to provide proper care for her children, and her children were harmed while under her care. Also, the evidence is clear and convincing that the conduct was of such a nature and duration as to render her incapable of providing for her children and to require the finding that integration was unlikely within a reasonable time, since mother failed to engage in mental health services throughout the case and she was not engaging in any services at the time of trial.

Mother argues that DHS's failure to refer mother for a neuropsychological examination for two years (it was recommended in 2019, and DHS made the referral in 2021) prevented mother from making progress in her parenting and treatment during that time. However, the evidence presented at trial shows that, even after DHS made additional efforts to accommodate mother's needs after an evaluation in 2021, mother did not effectively engage in services, as she often missed appointments and was removed from her mental health services. She also refused to engage in a program that would have provided her a caseworker with the ability to help with her everyday needs. Thus, even when mother received additional supports for her diagnoses, she did not make significant efforts to improve her parenting or engage in treatment for her diagnoses, or she was otherwise unable to do so. We thus reject mother's first two assignments of error.

*Mother's Third Through Sixth Assignments of Error.* As noted, in her third through sixth assignments of error, mother contends that the juvenile court erred in ruling that termination of mother's parental rights was in J and C's best interests and erred in terminating her parental rights to J and C. We disagree.

The parental rights of the parents of a child "may be terminated *** only *** if the court finds it is in the [child's] best interests[.]" ORS 419B.500. The "best interests" question in not weighted in favor of adoption solely because a parent is found to be unfit. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 161, 442 P3d 1100 (2019). The court must focus on the needs of the child and consider the unique circumstances of each case. *Id*. at 163, 166. But "[f]acts that demonstrate the parent's unfitness also may demonstrate that it is in the child's best interest that the parent have no further relationship with the child." *Id*. at 162. To terminate, the court must conclude that "the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022).

In this case, adoption was in J and C's best interest. J specifically requested adoption, J and C have a primary attachment to their foster family (who plan to adopt them), and they are doing well in their foster placement. Both children need permanency due to their mental health and developmental issues, which must be closely monitored as the children grow. Further, C's developmental delays could develop into his adulthood, so permanency beyond the age of 21 is particularly important for him.

Mother argues that the foster parents could have served in a permanent guardianship capacity rather than adoption, which would satisfy the children's need for permanency. Mother asserts adoption would sever the children's connection with mother and the grandparents. Mother attended visits with J and C, and interacted positively with them, but she still suffers from untreated mental diagnoses and intellectual disabilities that negatively impact J and C. Further, mother missed over one-half of her visits from

September 2021 to the time of trial, and J was adversely affected when mother missed visits. Mother also displayed a lack of understanding as to how her behaviors continued to negatively impact her children throughout this time. On this record, we agree with the trial court that termination was in the children's best interests. Thus, we reject mother's third through sixth assignments of error.

Affirmed.