No. 722 October 9, 2024 443

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of L. C., aka L. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. C. B.,
aka L. C. B., aka L. B., aka L. C. B., aka L. C.,
*Appellant.*

Multnomah County Circuit Court
22JU04537;
Petition Number T2022096;
A183675

Xiomara Y. Torres, Judge.

Argued and submitted August 14, 2024.

George W. Kelly argued the cause and filed the brief for appellant.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed.

**KAMINS, J.**

Father appeals a judgment terminating his parental rights to his three-year-old child, L. On appeal, father does not challenge the juvenile court's determination that he is unfit to parent L, ORS 419B.504; rather, he challenges the juvenile court's determination that terminating his parental rights is in L's best interests. The juvenile court determined that termination, rather than a permanent guardianship,[1] would be in L's best interests, because the adoptive parents were not willing to parent L as permanent guardians. On appeal, all parties appear to agree that that finding was not supported by the record.

As explained below, evidentiary deficits prevent us from concluding that DHS met its burden to demonstrate that it is highly probable that terminating L's legal relationship with father is in L's best interest. Consequently, we reverse.[2]

A parent's rights can be terminated only if the court finds that termination is in the child's best interests. ORS 419B.500(1). We do not presume that adoption is the best outcome for every child who lacks fit parents; rather, we must consider the needs and circumstances of the individual child. *Dept. of Human Services v. T. M. D.,* 365 Or 143, 161-63, 166, 442 P3d 1100 (2019). Termination is appropriate only if the court determines that "the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022).

We review the record *de novo*, a standard that "requires us to examine the record with fresh eyes" to determine whether the evidence developed below persuades us

---

[1] A permanent guardianship would permanently prevent father from taking custody of L and deprive father of any mechanism to change that status, but would preserve the legal relationship between father and L. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 164-65, 442 P3d 1100 (2019) (citing ORS 419B.365; ORS 419B.368(7)).

[2] The juvenile court also terminated mother's parental rights to L. In a separate case decided today, *Dept. of Human Services v. L. B.*, 335 Or App 452 ___ P3d ___ (2024), in which mother challenged the termination of her parental rights, we vacated and remanded for reconsideration.

that "it is 'highly probable' that severing the legal relationship" is in the child's best interest. *Id.* at 52 (quoting *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019)).

We consider several factors to determine whether termination of parental rights is in the child's best interests over a permanent guardianship: "(1) the strength of the bond between the parent and child; (2) whether severing that bond will help or harm the child; (3) the benefits to the child of terminating parental rights; and (4) the risk of harm to the child posed by termination." *Id.* at 53. As to the first factor—the strength of the bond between father and L—father engages in weekly two-hour visits with L and there is no dispute that the visits are positive; father is engaged at those visits, and L looks forward to seeing father. DHS does not dispute that a positive bond exists between father and child but contends that that factor does not weigh in favor of father, because the bond is not of "primary attachment." It is true that L's primary attachment is to the resource parents with whom he has lived his entire life. That a child's bond is not of primary attachment, however, is not the decisive factor. *T. M. D.*, 365 Or at 165 (observing that bond between child and mother weighed against termination even when child "has a good albeit very limited relationship with [m]other" (internal quotation marks omitted)). That L is bonded to father weighs against terminating the legal relationship, albeit to a lesser extent than if father was L's "primary attachment."

Factor two—whether severing that bond would help or hurt the child—weighs in favor of father. The permanency evaluator, Dr. Sage, testified that severing the bond would cause L confusion and emotional distress. *Cf. Dept. of Human Services v. A. L. B.* , 332 Or App 467, 472, 549 P3d 39, *rev den*, 372 Or 720 (2024) (termination in child's best interests when children "continue to suffer trauma connected to mother's conduct and conditions and evince distress after visits"); *Dept. of Human Services v. J. S. E. S.*, 315 Or App 242, 243, 501 P3d 556 (2021), *rev den*, 369 Or 209 (2022) (termination in child's best interests when child "becomes emotionally dysregulated and cries inconsolably in nearly every visit [with parent]").

Third, we consider the benefits to the child in severing the relationship. DHS asserts two benefits for L: (1) L needs the type of permanency that adoption provides and (2) it will benefit L to have the same status as his three siblings, who also live in the resource parents' home as adoptees. As DHS acknowledged at oral argument, there is no evidence in the record to demonstrate *L's* need for permanency; rather L shares the same need for permanency as all children. That is not sufficient evidence to justify termination; rather DHS must adduce evidence of a need specific to L. *T. L. M. H.*, 294 Or App at 752-53 ("[T]he juvenile code does not permit decisions to terminate parental rights to hinge on abstract notions of permanency. Rather, the juvenile code demands a persuasive factual showing that termination of parental rights to a particular child is in that child's best interest, in view of the particular needs and circumstances of the child.").

As to DHS's second reason—that severing the bond is in L's best interests because it allows L to have the same status as his three siblings living in the resource home—Sage testified that maintaining the same status would be beneficial to L. However, those siblings (who, unlike L, had lived with their biological parents) already have significant differences in parenting status from L, including a mediated plan that did not, at the time of the termination trial, authorize any visits with parents. Additionally, L has a half-sibling who lives in the house who, at the time of trial, had a permanency plan of reunification, not adoption. While preserving the similarities in relationships that are inherently different may offer some benefit to L, the extent and significance of those benefits is hypothetical; testimony establishing that terminating the bond between father and L would be detrimental to L is concrete. *See, e.g.*, *Dept. of Human Services v. D. F. R. M.*, 313 Or App 740, 746, 497 P3d 802, *rev den*, 368 Or 702 (2021) (finding that "the record does not establish by clear and convincing evidence that child's need for permanency demands that he have the same legal status that his siblings have").

In light of our recent case law, we find that there are evidentiary deficits in this record that prevent us from

concluding that DHS met its burden to demonstrate that it is highly probable that terminating L's legal relationship with father is in L's best interest. *See, e.g.*, *L. M. B.*, 321 Or App at 52 ("[T]he record simply is not complete enough for us to make the call that it is 'highly probable' that the benefits to [child] of severing her legal ties with mother outweigh the risks to her posed by severance."); *T. L. M. H.*, 294 Or App at 751-52 (concluding that the evidence in the record did not persuade us that termination was in the child's best interest, where child was bonded to parent and DHS did not adduce child-specific evidence as to why termination was superior to permanent guardianship). Because of those evidentiary deficits, we reverse.

Reversed.