134                December 26, 2024                No. 946

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of T. K. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. A. L.,
*Appellant.*

Marion County Circuit Court
20JU06308; A184467 (Control)

In the Matter of H. A. L., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. A. L.,
*Appellant.*

Marion County Circuit Court
19JU08983, 20JU03757; A184465, A184466

Courtland Geyer, Judge.

Argued and submitted November 8, 2024.

George W. Kelly argued the cause and filed the brief for appellant.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Father appeals from juvenile court judgments establishing a permanent guardianship for his two children.[1] On appeal, father contends that the juvenile court erred in determining that the Department of Human Services (DHS) proved that it was improbable that the children could be reintegrated into his home within a reasonable time. Father does not seek *de novo* review, nor does this case warrant it. ORS 19.415(3)(b); ORAP 5.40(8)(c). Thus, we review the juvenile court's legal conclusions for errors of law and are bound by its findings of historical fact if there is any evidence in the record to support them. *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586, (2012). We conclude that the trial court did not err and therefore affirm.

ORS 419B.365(2) provides that the "grounds for granting a permanent guardianship are the same as those for termination of parental rights." *See* ORS 419B.504. It states, in turn:

> "The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child or ward and integration of the child or ward into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change."

In *State ex rel SOSCF v. Stillman*, 333 Or 135, 145-46, 36 P3d 490 (2001), the court described the step-by-step analysis that applies in terminating parental rights. The court must determine that (1) the parent has engaged in some conduct or is characterized by some condition; and (2) the conduct or condition is seriously detrimental to the child. If both criteria are met, the court must then determine whether integration of the child into the parents' home is improbable within a reasonable time due to conduct or conditions not likely to change. *See* ORS 419B.504 (providing for termination upon a finding that the parent is unfit in a way detrimental to the child and that "integration of the child into the home of the parent or parents is improbable

---

[1] Mother has stipulated to the guardianship.

within a reasonable time due to conduct or conditions not likely to change"). A "reasonable time" is defined as "a period of time that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." ORS 419A.004(26). Finally, the court must determine whether guardianship is in the child's best interests. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 166, 442 P3d 1100 (2019); *see also Dept. of Human Services v. J. S. E. S.*, 315 Or App 242, 244, 501 P3d 556 (2021), *rev den*, 369 Or 209 (2022) (court's best interests determination is "focused on the needs of the child").

The juvenile court first took jurisdiction of the older child in June 2020, over concerns about mother's mental health and father's need for assistance in parenting the children. The court entered a second jurisdictional judgment in November 2020, based on allegations of father's domestic violence, erratic behavior, anger issues, and assistance needed to safely parent. In February 2021, the court took jurisdiction of the younger child shortly after his birth.

In 2022, the DHS alleged that father was unfit because of his criminal conduct, domestic violence, failure to make lasting adjustments, and having no viable plan for caring for the children and sought to change the permanency plan for both children to permanent guardianships. Father contested the permanent guardianships.

At the conclusion of the hearing, the juvenile court issued thoughtful findings and conclusions from the bench, explaining why the court planned to order permanent guardianships. After the hearing, the court entered an order and judgment establishing permanent guardianships for the children. The court found that father was unfit and that the children were unlikely to be integrated into his home within a reasonable time because: (1) father had failed to make lasting adjustments after services of an extended duration, so that it appeared that a lasting adjustment was unlikely; (2) father's criminal conduct impairs his ability to provide adequate care to the children; (3) father exposed the children to domestic violence; and (4) father failed to present

a viable plan for the children to return to his care.[2] The court further concluded that the children were in need of permanency, and that it was in the children's best interests that father never have physical custody of the children and that permanent guardianships be ordered.

Father does not dispute that he is unfit and that permanent guardianships are in the children's best interests. His only contention is that the juvenile court erred in determining that DHS proved that it was improbable that the children could be reintegrated into his home within a reasonable time. He contends that the record shows that he has made significant progress in ameliorating the circumstances that caused jurisdiction to be taken. For example, he is employed, has housing, has a good relationship with his children, and receives positive reports about his visits. He asserts that it is reasonable to delay the creation of a permanent guardianship to give father the opportunity to complete the further service he needs, which, he asserts, constitutes only a 36-week batterer's intervention program. He further asserts that custody could begin even before the intervention program is completed if father participates positively.

DHS rejects father's contention that all that remains for father to do is complete a 36-week batterer's program. DHS points out that those services were ordered early in the life of the case but never completed. While DHS does not dispute that father loves the children and has made some progress, DHS points out that father has never independently parented the children. DHS cites evidence that father has significant issues with domestic violence, control, and aggression that he has failed to adequately address.[3] Father continued to make frightening threats toward

---

[2] The court found:

"[Y]ou do love these children, you are motivated, and you do have a capacity to absorb information, and you maintain the capacity to change. You do, I believe that. I do not find that that can happen in a reasonable period of time, given [the children's ages and] developmental needs. And we are at a point in time—this is—this is made about their needs and not the needs of the case to come to a conclusion. But they are about one in the same, their needs. And there does need to be a permanency established at this time."

[3] Relating to the testimony of the expert domestic violence evaluator, the trial court found:

service providers and even toward the resource parents, despite having engaged in services directed at that conduct. There is testimony from a substance abuse counselor that father has "concrete thinking," meaning that he is unreceptive to alternative ways of thinking, which is an obstacle to change. Additionally, DHS notes that the children have special needs that father would have difficulty prioritizing with his particular personality disorders. Finally, DHS notes that the children have a close, loving bond with the resource parents and asserts that they are at a critical age for permanency.

We have reviewed the record and conclude that the trial court did not err in ordering the permanent guardianships. Based on the evidence of father's need for intensive batterer intervention, his lack of progress, and other obstacles cited by DHS, we conclude that the trial court reasonably concluded that father was unlikely to make changes that would allow the children to be integrated into father's home within a reasonable time. We therefore affirm.

Affirmed.

---

"I've been seeing cases for over 30 years. The kind of evaluation that I saw by Dr. Carter who is—I've never seen one like that from her, and those kinds of evaluations are very, very uncommon in my experience, the concerns that she related."