LAGESEN, P. J.
*750 Mother appeals a juvenile court judgment terminating her parental rights to her seven-year-old son, B. Over the opposition of both mother and B, the juvenile court terminated mother's parental rights on the grounds that she is unfit to parent B, ORS 419B.504, and that it is otherwise in B's best interest that mother's rights be terminated, ORS 419B.500. On appeal, mother does not contest the juvenile court's determination regarding her fitness to parent B. Instead, she contests only the determination that termination of her parental rights is in B's best interest. Mother urges us to find that the Department of Human Services (DHS) has not demonstrated persuasively that termination is in B's best interest, in view of his strong attachments to both mother and his sister, and the absence of evidence that terminating mother's parental rights is a necessary step toward achieving a stable home for B. We reverse and remand.
The question before us is whether termination of mother's parental rights is in B's best interest. ORS 419B.500. Our review of that question is de novo . ORS 419A.200(6) ; ORS 19.415(3). That standard requires us to examine the record with fresh eyes to determine whether the evidence developed below persuades us that termination is in B's best interest. Because the applicable standard of proof is the clear-and-convincing-evidence standard, to sustain the juvenile court's judgment we must be persuaded by the evidence that it is highly probable that termination of mother's parental rights is in B's best interest. Dept. of Human Services v. M. P.-P. , 272 Or. App. 502, 503, 356 P.3d 1135 (2015). Thus, our role in resolving the question of B's best interest is, for the most part,[1] identical to that of the juvenile court.
The evidence in this record does not persuade us that termination of mother's parental rights is in B's best *751 interest. Although it is readily apparent that B needs a permanent, stable home with clearly identified primary caregivers as soon as possible, what is not easily discernible is whether terminating mother's parental rights is the manner in which to accomplish permanency that is in B's best interest. That is for two reasons.
First, the evidence persuades us that B is strongly bonded to his mother and older sister, and that it would be best for B if those attachments could be maintained. See ORS 419B.498(2)(b)(B) (indicating that the need to pre-serve child's family attachments may militate against filing a petition to terminate parental rights). Similar to the situation in M. P.-P. , although mother is unfit to parent B herself, none of the facts establishing mother's unfitness involved abuse of B. 272 Or. App. at 505, 356 P.3d 1135 ("We emphasize that the facts establishing mother's unfitness do not include any abuse of [child]."). The psychologist who evaluated B opined that it would be "really disrupting" to B to cut off his contact with mother, and that it would be best for B to have ongoing contact with mother, provided that she "attend visits as scheduled without undue disruptions, and can be supportive of the permanent placement *1188 plan for [B]." The psychologist further opined that it would be best for B to have ongoing contact with other relatives and adults who have become important to B, so long as those people "are deemed * * * safe, stable, and appropriate for [B]." Thus, it appears that it would also be in B's best interest to have ongoing contact with his sister.[2]
Second, the record contains little, if any, evidence about the viability of other potential permanent arrangements for B, let alone evidence that would permit a meaningful evaluation of whether and how B's attachments can be preserved in a manner consistent with his permanency needs. When asked to opine on whether adoption, guardianship, or some other plan would be in B's best interest, the psychologist who evaluated B did not render an opinion *752 on whether one plan was superior to another. Instead, she identified in qualitative terms what B needs:
"[W]hat I can say about that is that [B] needs to be in a home that he-that he-that he considers to be permanent, that he knows isn't going to change. That-and he needs to be able to get into that mindset and for it to be true, for it to be reliable, because he's-you know, going to start doubting that as these adults in life aren't reliable."
Further, although B had been placed with his paternal grandparents at the time of the termination hearing, and they were potential adoptive resources, DHS presented no evidence addressing whether they would be amenable to a guardianship, or the extent to which they would be willing to facilitate B's ongoing relationship with mother, his sister, and others if mother's rights were terminated. That is, on this record, it is difficult to get a sense of how a particular choice about permanency for B likely will affect his life. Finally, the record also lacks evidence that permits us-as factfinders-to assess meaningfully whether severance of mother's relationship with B, notwithstanding their attachment, might be necessary to ensure that mother does not undermine the efforts of B's primary caregivers to provide him the type of stable and permanent home that B needs.
DHS nevertheless urges us to find that termination of mother's parental rights is in B's best interest. In so doing, however, DHS relies primarily on general assertions about the type of permanency provided by adoption. Pointing to Dept. of Human Services v. T. M. D. , 292 Or. App. 119, 138, 423 P.3d 88 (2018), DHS notes that we have acknowledged that "the juvenile code expresses a legislative preference that children be placed in the most permanent setting suitable to their needs." DHS then argues that "[t]here can be no real dispute that any form of placement other than adoption cannot give a child the permanence and security of adoption," and that other forms of permanency would create "dangerous uncertainty" for B, making it in his best interest to terminate mother's parental rights, given B's need for permanency.
Although DHS's observations about the permanency afforded by adoption may be accurate in the abstract, the *753 juvenile code does not permit decisions to terminate parental rights to hinge on abstract notions of permanency. Rather, the juvenile code demands a persuasive factual showing that termination of parental rights to a particular child is in that child's best interest, in view of the particular needs and circumstances of the child. For the foregoing reasons, we are not persuaded by DHS's showing here.
Reversed and remanded.

We ordinarily defer to the juvenile court's credibility findings when those findings are based on the court's direct observation of the witnesses. State ex rel. Juv. Dept. v. G. P. , 131 Or. App. 313, 319, 884 P.2d 885 (1994). That is because we, as an appellate court, do not have the same opportunity to observe witnesses firsthand and, for that reason, do not have the same institutional capacity to make demeanor-based judgments.

DHS did not pursue termination of mother's parental rights with respect to B's sister. Although mother was determined to be unfit to parent her as well, the permanency plan for B's sister was APPLA-"Another Planned Permanent Living Arrangement." ORS 419B.476(5).