Argued and submitted July 7, affirmed September 9, 2021

In the Matter of M. J. G.-P., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. D. G.,
*Appellant.*

Lincoln County Circuit Court
19JU06932; A175430

499 P3d 139

Mother appeals a judgment terminating her parental rights to her now three-year-old son, M. M was born prematurely and had been affected by mother's drug use while pregnant. The Department of Human Services (DHS) removed M from his mother's care and initially placed him with his mother's sister after the sister was granted certification for a temporary and emergency placement. Initially, mother's sister showed interest for full certification, but later rescinded her willingness to participate. Since then, M has had a history of transitions from caregiver to caregiver. A termination hearing took place and the juvenile court terminated mother's parental rights. On review, mother does not dispute that M could not be returned to mother's care. Rather, she argues that "reunification" is understood broadly to include the reunification of a child with a parent who, because of personal deficits, opts to rely on family members to provide care. *Held*: On *de novo* review, the Court of Appeals affirmed the juvenile court's termination decision. That court's conclusion was also influenced by DHS's representation at oral argument before the Court of Appeals that mother's sister, though not eligible to be approved as guardian, could be considered as an adoptive placement.

Affirmed.

Sheryl Bachart, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

Mother appeals a judgment terminating her parental rights to her now three-year-old son, M. On *de novo* review, ORS 419A.200(6); ORS 19.415(3)(a), we affirm.

The Department of Human Services (DHS) removed M from mother's care shortly after his birth. M was born prematurely and had been affected by mother's drug use while she was pregnant. Mother wanted M to be with her sister, and, initially, DHS placed M with mother's sister after it was able to grant her sister temporary, emergency certification. After DHS requested background checks—for the purpose of full certification—on two people with whom mother's sister lived, mother's sister withdrew her request for certification and returned M to DHS. M was placed with another foster family. Mother's sister later reapplied for certification, but DHS was not able to grant certification because of "collateral information that we had *** about a history of domestic violence and current domestic violence." DHS also was not able to certify mother's sister as a potential guardian for M.

At the time of the termination hearing, which took place over several months, it was undisputed that M could not be returned to mother's care. M was thriving in his foster placement, and attached to his foster parents, but they were not available as a permanent placement for him, so DHS was—or would be—in the position of seeking a permanent placement for M. Dr. Towell, who evaluated M, opined that, in light of M's history of multiple placement transitions from caregiver to caregiver, the fact that M was facing a transition from the care of his current foster parents to whom he was attached, and M's developmental stage, it was critical for M's next transition to be into a permanent placement so that he could form long-term attachments with his caregivers. Towell explained, among other things, that "[t]he risks for a child who does not have the opportunity to build a secure attachment are very high, and we hope to have a child in one consistent home so that they have the opportunity to build such an attachment as soon as possible." Towell also explained that, given M's particular needs, which included the need for some early

intervention services, he required a "skilled and consistent caregiver."

Although mother acknowledged that she, herself, could not care for M, she urged the juvenile court not to terminate her parental rights. She contended that terminating her rights would result in M's ties to his family being severed and that the court should decline to terminate to allow mother more time to explore how to ensure that M be placed with her sister. Following the hearing, the court took the matter under advisement and later issued a letter opinion ruling that mother's rights be terminated.

On appeal, mother challenges the juvenile court's termination decision. Relying on *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 413 P3d 1005 (2018), mother argues that the concept of "reunification" is understood broadly to include the reunification of a child with a parent who, because of personal deficits, opts to rely on family members to provide care. Thus, she contends that we, on *de novo* review for clear and convincing evidence, should not be persuaded that reunification is improbable. For similar reasons, mother argues that we should not be persuaded that termination is in M's best interests because of the risk that termination will mean that M's contact with his family will be severed.

As noted, our review is *de novo*. "That standard requires us to examine the record with fresh eyes to determine whether the evidence developed below" persuades us that it is highly probable that the disputed elements of DHS's termination case are present. *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019). In other words, our role is more or less the same as the juvenile court's in an appeal of a termination decision. *Id*. at 750 & n 1 (discussing how, on *de novo* review, our role is the same as the juvenile court's role, and how it differs).

This case involves a termination of mother's rights for unfitness under ORS 419B.504. To terminate parental rights under that statute, a juvenile court must find, by clear and convincing evidence, ORS 419B.521(1), that (1) the

parent is "unfit by reason of conduct or condition seriously detrimental to the child or ward," ORS 419B.504; (2) integration of the child into the home of the parent or parents is improbable within a reasonable amount of time due to conduct or conditions not likely to change, ORS 419B.504; and (3) termination is in the child's best interest, ORS 419B.500. On appeal, mother does not contest the juvenile court's determination that she is not fit. Instead, she challenges the latter two determinations: that M's reintegration into her home is improbable within a reasonable amount of time and that it is in M's best interest that mother's rights be terminated. Both of mother's arguments hinge on her desire for M to be placed with her sister.

We are persuaded that M cannot be reintegrated into mother's home within a reasonable amount of time, even viewing reintegration broadly to include any private arrangements mother might make to have her sister care for M. Mother expressed an interest in formally placing M in her sister's care from the start through some sort of private arrangement. A DHS worker dealing with her case responded that she should consult her attorney about that option. Yet, during the more than two-year period between M's removal and the close of the termination trial, mother did not pursue a private adoption or guardianship, and she testified at trial that her objective, at least for part of that time, was to have M in her custody.

We are also persuaded that termination is in M's best interests. In particular, we are persuaded by Towell's testimony that M needs permanency and that it is critical that it happen soon so that he can form attachments to his caregivers. Mother, herself, cannot supply that permanency, nor can M's foster family supply it. DHS determined that it could not approve a guardianship with mother's sister—a determination that is not before us—and no other potential guardians have been identified. In view of those factors and keeping in mind that it is DHS's burden to show by clear and convincing evidence that termination of mother's parental rights is in M's best interests, we are persuaded that termination of mother's parental rights is in M's best interest so that DHS can find a permanent home for him and help him make the transition from his foster family to his adoptive

family. However, our conclusion in that regard is influenced by DHS's counsel's representations at argument that mother's sister, though not eligible to be approved as guardian, could be considered as an adoptive placement.[1] Although neither we, nor the juvenile court, are empowered to direct DHS's placement decisions, *see* ORS 419B.337 ("[T]he court may place the ward in the legal custody of [DHS] for care, placement and supervision."); *Dept. of Human Services v. S. E. K. H./J. K. H.*, 283 Or App 703, 706-07, 389 P3d 1181 (2017) (reiterating ORS 419B.337), given DHS's representation that mother's sister has not been ruled out as an adoptive resource, we expect that DHS will evaluate her as a potential adoptive resource and take into account the value to M of maintaining the bond with his aunt that the record suggests has been established.

Affirmed.

---

[1] DHS's counsel explained at oral argument that the adoption procedure had not taken place yet and that "no one has been approved, no one has been ruled out, including [mother's sister and her husband] or any other family member for that matter." Shortly thereafter, counsel reiterated that "again I go back to, [mother's sister] has not been ruled out as *** an adoptive placement, so there—there's nothing in here showing that she is not going to have any relationship with the child anymore."