***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted August 23, 2023, affirmed September 27, 2023

In the Matter of H. L. IV,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

B. J. M.,
*Appellant.*

Klamath County Circuit Court
22JU02374; A180724

Marci Warner Adkisson, Judge.

Kristen G. Williams filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Mother appeals from a judgment terminating her parental rights to her son, H. Mother does not challenge the juvenile court's conclusion that she is unfit nor that she has neglected H. Rather, she argues only that the Department of Human Services (DHS) did not meet its burden to demonstrate that termination of her parental rights was in H's best interest under ORS 419B.500. On *de novo* review, we find that DHS met its burden to prove by clear and convincing evidence that termination of mother's parental rights is in H's best interest.[1]

As noted, our review is *de novo* under ORS 19.415 (3)(a). We must "examine the record with fresh eyes to determine whether the evidence developed below persuades us that termination is in [the child's] best interest." *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018). We must determine whether there is clear and convincing evidence that mother's parental rights should be terminated. *Id.*; ORS 419B.521(1). That requires us to be persuaded by the evidence that it is highly probable that termination of mother's rights is in H's best interest. *T. M. L. H.*, 294 Or App at 750. To conclude that termination of parental rights is in a child's best interest, "we must be able to determine with confidence that the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022). In making that determination, we consider (1) the strength of the bond between the parent and child; (2) whether severing that bond will help or harm the child; (3) the benefits to the child of terminating parental rights; and (4) the risk of harm posed by the same. *Id.* Each termination case poses unique circumstances such that no legal test is all-encompassing, but our focus is on the needs and unique circumstances of the child. Although the best-interest inquiry focuses on the child's needs, "[f]acts

---

[1] In a related appeal, father argued that his parental rights to H should not be terminated because the juvenile court erred in concluding that he was unfit or that he neglected H. *Dept. of Human Services v. H. L.*, 328 Or App 242, __P3d __ (2023). We rejected those arguments and affirmed the termination of father's parental rights. *Id.*

that demonstrate the parent's unfitness also may demonstrate that it is in the child's best interest" to terminate parental rights. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 162, 442 P3d 1100 (2019).

Applying *de novo* review and the standard above, we conclude that termination of mother's parental rights is in H's best interest. We do not repeat all of the facts in the record. Mother initially admitted to dependency jurisdiction to address her substance abuse and mental health issues that interfered with her ability to safely parent her child. The petition to terminate her rights and the ultimate judgment were based, among other things, on mother's unfitness due to her impairment by drugs and alcohol and mental health issues as well as her neglect of H by failing to maintain contact with him.

H was five years old at the time that DHS first filed a dependency petition. At that time, H was nonverbal but had not engaged in any services to address his issues. At the time of the permanency hearing, H was almost seven years old, and his communication skills were similar to those of a child around 12 to 18 months. He has "global cognitive impairment" with an IQ that places him in the 0.2 percentile and communication skills below the 0.1 percentile.

H's needs are likely to continue for his lifetime, beyond when he reaches adult age. He needs a high amount of structure and supervision. He thrives on consistency and routines, and when a routine is disrupted or there is an unexpected change, he tends to become dysregulated in emotions and behavior. When H is frustrated, he will scream, throw himself on the floor, kick, hide, throw objects, and hit peers or adults. Mother appears unaware of H's particular needs. He frequently engages in self-harming behaviors. H's adult sister, who is also mother's daughter, is a possible adoptive resource; that sister and her siblings are not speaking with mother. The sister describes a family history that includes long spells of mother's alcohol abuse, which resulted in the sister caring for both mother and H when H was an infant. She also describes her father constantly physically abusing her mother.

Mother has a long history of methamphetamine and alcohol abuse dating back to when she was a child. She has been through periods of drug and/or alcohol abuse, abstinence, and relapse. After mother admitted to dependency jurisdiction, she was consistently unable to attend or finish drug treatment and mental health programs. Significantly, her visits with H were also inconsistent. Despite efforts by DHS to contact mother and follow up with mother's attorney, mother did not meet with DHS representatives from March 2022 until September 2022 to arrange for visits with H. As a result, she did not visit with H between March 2022 until December 2022, right before the termination hearing. Since the December visits with mother took place, H has had more emotional behaviors like screaming and crying and keeping to himself.

DHS contends that because of H's specialized needs for a highly structured and predictable environment, mother's inconsistent visitation and her failure to understand his disabilities and needs would likely cause H active harm if an ongoing relationship continued. We agree that there is clear and convincing evidence that mother's continued inconsistent presence is highly probable to cause disruption and potential harm in H's life that outweighs the benefits of maintaining mother's parental rights to H. Further, the record lacks affirmative evidence of a strong bond between H and mother, and it contains evidence that visits with mother, when they occurred, had a negative impact on H.

DHS also contends that termination of parental rights and possible adoption is in H's best interests because of the stability that an adoptive family would provide in caring for H into his adult life. DHS notes that a juvenile court guardianship, which is mother's preference, ends when H is 21 years old. *See* ORS 419B.365(6) (stating that a guardianship established under this section lasts as long as the ward is subject to the court's jurisdiction under ORS 419B.328, which is until the ward is 21 years old). There is clear and convincing evidence that H is likely to need a lifetime of care into his adulthood. There is a benefit to H in avoiding a second potential placement if the adoptive family can continue to fully care for H into his adulthood. Considering

all of the evidence regarding H's unique circumstances, we agree that there is clear and convincing evidence that it is in H's best interest that mother's parental rights should be terminated.

Affirmed.