***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted May 24, affirmed October 18, 2023, petition for review denied March 7, 2024 (372 Or 107)

In the Matter of J. J. E. M., a Child.

DEPARTMENT OF HUMAN SERVICES, *Petitioner-Respondent,*

*v.*

T. S. M., *Appellant.*

Lane County Circuit Court
21JU00083; A179558

Erin A. Fennerty, Judge.

G. Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Father appeals a judgment terminating his parental rights to his daughter, J, on the bases of unfitness, ORS 419B.504, and neglect, ORS 419B.506. He challenges the trial court's finding that termination of his parental rights was in J's best interest notwithstanding his unfitness to safely parent J. Specifically, father argues that his mother was prepared to care for J and that, therefore, permanency and stability for J could have been achieved through a permanent guardianship with J's paternal grandmother serving as J's guardian. We conclude that clear and convincing evidence establishes that termination is in the best interest of J. Accordingly, we affirm.

We review this termination of parental rights case *de novo*. ORS 19.415(3)(a). We must determine whether there is clear and convincing evidence that father's parental rights should be terminated. *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019). That requires us to be persuaded by the evidence that it is highly probable that termination of father's rights is in J's best interest. *Id.* "We ordinarily defer to the juvenile court's credibility findings when those findings are based on the court's direct observation of the witnesses." *Id.* at 750 n 1. Because a full recitation of the facts would not benefit the parties, the bar, or the bench, we recount only those facts necessary to give context to our ruling.

J was removed from her parents' care while she was in the neonatal intensive care unit shortly after her premature birth.[1] Removal occurred after father said that he planned to take J home to his trailer, which was without heat, water, or electricity. J was placed in substitute care and has lived with her current foster family since she was ten weeks old. The marriage and family therapist retained by DHS to evaluate J's permanency needs testified to the secure attachment between J and her current foster parents, and she testified that "[i]t is in [J's] best interests to be adopted."

---

[1] J was delivered at 35 weeks' gestation.

Father has a history of explosive and antisocial behavior patterns, mental illness, and autism. Father underwent a psychological evaluation in March 2020, conducted by Dr. Sorensen. Sorensen testified that father uses "threats or direct violence as a means of altering other people's behavior," and that father finds that strategy "completely appropriate, highly effective, and something that he [i]s willing to do despite the fact that it might result in his suffering some period of incarceration." Father is currently incarcerated with an expected release date in July 2026. His proposed plan for J is for her to live with his mother in Florida until he is released from prison. J's paternal grandmother testified that she is willing to serve as J's guardian in Florida where she is raising father's son. That grandmother also testified that she would allow father to have supervised visitation with J, but it is unclear whether she understands the extent of father's mental health and behavioral issues and the need to act protectively for J against father. When pressed on cross-examination, the grandmother changed her testimony about whether the foster family would allow her to have video visits with J, calling into question her credibility and her insight into J's needs and what her role would be as J's guardian.

Father does not dispute that the statutory grounds for termination—parental unfitness and neglect—have been established by clear and convincing evidence. We, nevertheless, must consider whether J's "best interest will be served by termination of the parent-child relationship." *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189, 796 P2d 1193 (1990); *see also* ORS 419B.500(1) (termination of parental rights is "for the purpose of freeing the ward for adoption if the court finds it is in the best interests of the ward"); *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022) ("[W]e must be able to determine with confidence that the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship."). Having reviewed the entire record *de novo*, we conclude by clear and convincing evidence, as did the trial court, that termination of the parent-child relationship between J and father is in J's best interest. The benefits to J of ending that relationship and

freeing her for adoption outweigh the risk of harm posed by severing that relationship.[2]

Affirmed.

---

[2] Pursuant to OEC 201(f), we may, and do, take judicial notice of the fact that mother's parental rights were terminated by default in Lane County Circuit Court Case No. 21JU00084 on April 28, 2022.