328                    November 29, 2023                    No. 625

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S.-B. C. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. C.,
*Appellant.*

Douglas County Circuit Court
22JU03862; A181039

Kathleen E. Johnson, Judge.

Argued and submitted October 10, 2023.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Egan, Presiding Judge, and Kamins, Judge, and DeVore, Senior Judge.

EGAN, P. J.

Affirmed.

**EGAN, P. J.**

Father appeals a juvenile court judgment terminating his parental rights to his 16-year-old daughter, S. Over father's opposition but in accordance with S's wishes, the juvenile court terminated father's parental rights on the grounds he is unfit to parent S under ORS 419B.504, and that it is in S's best interests for father's parental rights be terminated under ORS 419B.500.

On *de novo* review pursuant to ORS 19.415(3), we conclude that clear and convincing evidence establishes that father is unfit to care for S and that termination of father's parental rights is in S's best interests. Accordingly, we affirm the juvenile court's judgment. We write to briefly explain the basis for that ruling.

This court reviews the termination of father's parental rights *de novo.* ORS 19.415(3)(a). In doing so, we must determine whether the evidence shows that the statutory grounds for termination have been established by clear and convincing evidence. ORS 419B.521(1). Evidence is clear and convincing when it makes the existence of a fact "highly probable" or the evidence is of "extraordinary persuasiveness." *Dept. of Human Services v. E. N.*, 273 Or App 134, 136, 359 P3d 381, *rev den*, 358 Or 374 (2015).

ORS 419B.504 authorizes termination of parental rights when the court determines that, at the time of trial, the parent is "unfit by reason of conduct or condition seriously detrimental to the child or ward and integration of the child or ward into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change." The court considers all proven conduct or conditions in combination when evaluating a parent's fitness. *Dept. of Human Services v. C. M. K.*, 270 Or App 1, 18, 346 P3d 1254, *rev den*, 357 Or 324, *cert den*, 577 US 944 (2015). Additionally, under ORS 419B.500(1), before termination of parental rights, the court must conclude that "terminating a child's legal relationship with a parent is in the child's best interest." *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022).

As an initial matter, we agree with the juvenile court that there is clear and convincing evidence that father was unfit by reason of conduct or condition seriously detrimental to S and that integration of S into father's home was improbable within a reasonable time: Father was diagnosed with intermittent explosive disorder; father has consistently struggled with anger management and has been physically abusive to S; and father's prolonged harmful conduct toward S was seriously detrimental to S's psychological wellbeing, as evinced by the symptoms of post-traumatic stress disorder (PTSD) that S experiences.

Further, even after engaging in services, father engaged in problematic behavior toward S and the rest of his family, including pushing and shoving S. That is, even after engaging in services, father failed to make the necessary changes to the way that he interacted with his family and, in particular the way that he interacted with S, for S to be safe in father's home. Moreover, father continued to place his own needs over those of S; he did not appreciate the profound and damaging effect that his conduct had on S; nor did he appropriately respond to S's particular needs given that she suffered trauma in her home at his hand.

On appeal, relying on *State ex rel SOSCF v. Stillman*, 333 Or 135, 36 P3d 490 (2001), father argues that the juvenile court erred, because the department failed to meet its burden to prove he would continue to engage in conduct that would be seriously detrimental to S. But this case is unlike *Stillman*. In *Stillman*, "nothing in the record suggests that father's personal relationship with his children was anything but loving, strong, and positive," and the record reflected that father's dangerous drug-related conduct would "not be repeated." *Id.* at 148, 152.

In this case, each time S had been returned to father's care, father engaged in conduct such as yelling and screaming, and pushing and shoving, that was harmful to S and again led to her removal. And in this case, according to father's counselor, father reached the limits of his capacity for change and, as noted, was still failing to place the needs of S over his own. Thus, in our view, it is highly probable that father would continue to engage in that same

harmful conduct if S was returned to his care; that is, we can infer from a detailed review of this record that father was and continues to be unfit by reason of conduct or condition seriously detrimental to S and that integration of S (who, as noted, was 16 at the time of the termination trial) into father's home was improbable within a reasonable time.

We now turn to whether termination of father's parental rights was in the best interests of S. "[T]o conclude that termination is in a child's best interest[s], we must be able to conclude that the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. N. H.*, 322 Or App 507, 520, 520 P3d 424, *rev den*, 370 Or 694 (2022) (internal quotation marks omitted). That requires a "fact-specific, child-centered inquiry into how termination likely will affect the particular child." *L. M. B.*, 321 Or App at 52. Factors we consider in conducting that inquiry include "(1) the strength of the bond between the parent and child; (2) whether severing that bond will help or harm the child; (3) the benefits to the child of terminating parental rights; and (4) the risk of harm to the child posed by termination." *Id.*

Here, each of those factors points toward a determination that terminating the legal relationship between S and father is in S's best interest. S made it abundantly clear through her statements to DHS caseworkers, treatment providers, a nine-page letter, and her testimony, that she had been traumatized by father's abusive conduct. S's providers agree that placing S back into an environment with the hallmarks of abuse—the yelling, screaming, and physical intimidation—to which S had been subjected previously, would further traumatize her and could lead to additional long-term social, academic, and emotional detriment.

We also note that, by all accounts, S is thriving in her foster placement, which will be her adoptive placement. Her foster parents have provided her with the support that she needed to learn to advocate for herself. Further, although only 16, she is enrolled in a program where she is getting credits at nearby community college, where she plans to matriculate before attending nursing school at an

Oregon university. She is also president of her local 4-H club, in which she has been very involved, and in which she has built a positive reputation for herself. Moreover, her PTSD symptoms have diminished since she stopped visitations with father.

Father argues that termination of his parental rights was not in the best interests of S. He first asserts that the state did not carry its burden of proof because the state cannot "carry its burden to prove that termination of parental rights is in a particular child's best interest by merely relying on *** 'general assertions about the type of permanency provided by adoption.'" (Quoting *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 752, 432 P3d 1186 (2018), *rev den*, 333 Or 135 (2019)). To be sure, the juvenile code "demands a persuasive factual showing that termination of parental rights to a particular child is in that child's best interest, in view of the particular needs and circumstances of the child." *Id.* at 753. But, in our view, that burden was met in this case, given S's particular needs and circumstances, as evinced by among other evidence, S's own testimony.

Father also argues that "adoption was not in [S's] best interests because leaving father's parental rights intact would allow [S] to maintain a legal relationship with her biological siblings," pointing to evidence that S "'gets along well' with her younger sisters."

We are cognizant of the significant role that sibling relationships can play in a person's life. Nevertheless, the facts of this case demonstrate clearly and convincingly that termination of father's parental rights is in S's best interests. Consequently, we affirm the judgment of the juvenile court.

Affirmed.