No. 894 October 8, 2025 191

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. X. M. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. M.,
*Appellant.*

Malheur County Circuit Court
23JU02087; A186856

Erin K. Landis, Judge.

Submitted August 28, 2025.

Aron Perez-Selsky and Peter Druckenmiller filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, Jacquot, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

Father appeals a judgment terminating his parental rights to his son, K.[1] On appeal, father does not challenge the juvenile court's determination that he was unfit. He challenges only the juvenile court's determination that termination of his parental rights was in K's best interest. Specifically, father argues that the Oregon Department of Human Services (ODHS) failed to identify a suitable adoptive placement for K, contending that ODHS failed to take K's exceptional developmental needs into consideration and that ODHS did not prove that K's permanency needs could not be satisfied through permanent guardianship. On *de novo* review, ORS 19.415(3)(a), we are persuaded by clear and convincing evidence that it is in K's best interest to terminate father's parental rights, and we affirm the juvenile court's judgment.

*De novo* review requires us to "examine the record with fresh eyes to determine whether the evidence developed below" persuades us by clear and convincing evidence that the termination of father's parental rights is in the child's best interest. *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019); ORS 419B.500 (terminating the rights of a parent is only done if it is in the best interests of the child). To terminate a parent's right to a child, the juvenile court must determine that the petitioner (typically ODHS) has proved a statutory basis, such as unfitness under ORS 419B.504, and that termination is in the child's "best interests." *Dept. of Human Services v. M. H.*, 306 Or App 150, 152, 473 P3d 1152 (2020). A parent's rights may be terminated if they are "unfit by reason of conduct or condition seriously detrimental to the child * * * and integration of the child * * * into the home of the parent * * * is improbable within a reasonable time due to conduct or conditions not likely to change." ORS 419B.504. The juvenile court determined that father was unfit, and he does not challenge that ruling on appeal.

---

[1] The juvenile court consolidated mother's and father's termination cases and ultimately terminated both parents' parental rights to K. Mother did not appear at the termination hearing and does not appeal the judgment terminating her parental rights to K.

In a second, separate inquiry, the court must determine that the termination of the parent's rights is in the best interests of the child. ORS 419B.500. The best-interests inquiry requires a court to engage in a "fact-specific, child-centered inquiry" on a case-by-case basis. *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 52-53, 515 P3d 927 (2022). The "focus[] [is] on the needs of the child, taking into consideration the unique circumstances of each case[]" to determine whether "the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. N. H.*, 322 Or App 507, 519-20, 520 P3d 424, *rev den*, 370 Or 694 (2022) (internal quotation marks omitted).

Considerations that inform whether termination is in the child's best interest include: "(1) the strength of the bond between the parent and child; (2) whether severing that bond will help or harm the child; (3) the benefits to the child of terminating parental rights; and (4) the risk of harm to the child posed by termination." *L. M. B.*, 321 Or App at 53. A juvenile court should also consider whether an identified adoptive placement is in a child's best interest. *M. H.*, 306 Or App at 161 (explaining that under ORS 419B.498(1)(a), "identifying and approving an adoptive placement is not to occur only *after* a parent's rights are terminated, * * * but rather is to occur *simultaneously* with the petition to terminate[, and] [t]hat required simultaneous effort suggests that the identified adoptive placement is relevant to the best-interest inquiry in a termination proceeding").

At a termination trial, ODHS bears the burden of demonstrating, by clear and convincing evidence, that terminating the parent's rights will serve the child's best interests. *Id.* at 152. "Evidence is clear and convincing when it makes the existence of a fact highly probable or when it is of extraordinary persuasiveness." *Dept. of Human Services v. R. K.*, 271 Or App 83, 88, 351 P3d 68, *rev den*, 357 Or 640 (2015) (internal quotation marks omitted). ODHS "cannot rely on a lack of evidence that termination would harm the child to meet that burden of proof." *M. H.*, 306 Or App at 162.

The evidence here establishes by clear and convincing evidence that termination of father's parental rights is in the best interests of K. K was six-and-a-half at the time of the trial. He lives in Oregon. K's maternal half-sisters, A and B, live in Oregon. At the time of the termination trial, father was incarcerated in Oregon. Father's parents live in Oregon.

K was removed from his parents' care when he was a one-and-a-half years old, and the juvenile court asserted jurisdiction in November 2020. K, A, and B lived with K's paternal grandparents for the first three years of his life. ODHS removed them from paternal grandparents' care in 2022 because ODHS determined paternal grandparents presented founded threats to the children of medical neglect and sexual abuse. Paternal grandparents had failed to report a medication change for B. And, despite ODHS's warnings that father was not allowed in their home because he had an active arrest warrant, paternal grandparents had permitted father at their home on "multiple instances." Father was charged with multiple criminal offenses for allegedly sexually abusing A and B during those visits. At the time of the termination hearing, K and A lived together in Oregon with a resource family. B lived in a separate resource home and, due to her demonstrated behavioral disturbances, is likely to require a separate permanent placement from A and K.

Father's primary argument that termination is not in K's best interests centers around a potential adoptive placement for K. Father argues that ODHS concluded that K's adoptive placement would be with K's maternal grandmother in Mexico and that the placement is not in K's best interests because it would sever K's paternal biological relationships, and K's learning and language delays would be exacerbated in a new country.

Father's argument relies on a factual premise not supported by the record. ODHS has not made a recommendation that K's maternal grandmother in Mexico should be the adoptive placement for K, and the juvenile court has not decided on the adoptive placement. In fact, at the time of the hearing, ODHS had identified at least two potential adoptive placements for K: K's maternal grandmother, in Mexico, and his current resource family, in Oregon. Both potential

adoptive placements were aware of K's developmental needs and would maintain his relationship with A, with whom K was strongly bonded. ODHS intended to conduct further evaluation of the best adoptive placement for K after the termination trial.

Considering K's best interests and needs in totality, we are persuaded by clear and convincing evidence that severing father's rights to allow for K to be adopted is in K's best interests. K has been in the care of the state for most of his life and had been in resource care for 36 months at the time of the hearing. K and father have a limited relationship, largely because of father's incarceration, and K does not understand it as a parent-child relationship. In addition, although father was slated to be released from prison a few months after the termination trial, he faced the possibility of further incarceration from the pending charges for the offenses allegedly committed against K's older half-sisters while K and his half-sisters were living with father's parents. The record thus demonstrates that severing K's relationship with father is unlikely to harm K.

The record also establishes by clear and convincing evidence that father has not attempted to address his substance abuse, which is one of the bases upon which the juvenile court took jurisdiction over K. We are also persuaded that it is in K's best interests to maintain a relationship with A and remain placed with A if possible because they have a strong sibling bond. ODHS intended to work to preserve that sibling relationship in the event of termination of father's parental rights. That evidence further persuades us that termination of father's parental rights was in K's best interests.

K participated in three psychological evaluations and a sibling interaction study conducted in 2021, 2022, and 2024, with the same psychologist. The psychologist's recommendation consistently has been that K needs to be placed permanently as soon as possible to ensure the best chance of overcoming his learning challenges without developing additional disruptive behavior traits. While K does have a relationship with his paternal grandparents, we are persuaded by clear and convincing evidence that the downside to K of severing those relationships does not outweigh the benefits of

freeing K for adoption with A. K is doing "really well," is "very happy," and a "go-go-go child" in his current resource family placement with A. There is strong evidence that K's learning and developmental delays are improving outside of father and paternal grandparents' care, and that permanency as soon as possible will be critical to continued improvement.

Finally, father argues that a permanent guardianship with a paternal relative could serve to satisfy K's permanency needs, instead of adoption. Father did not make that argument to the juvenile court, and, therefore, it is unpreserved. But, "on *de novo* review, we must examine the record ourselves and determine whether we are persuaded that termination of [a parent]'s parental rights is in child's best interests[,]" keeping in mind that "we do consider the issue of guardianship, to the extent it was developed in the record, in our determination." *Dept. of Human Services v. K. T.*, 334 Or App 55, 64, 554 P3d 832, *rev den*, 372 Or 787 (2024) (explaining that despite the fact that the mother did not preserve her argument that guardianship was in the child's best interest, in "[c]ases where a parent is unfit to be a custodial resource" our consideration on appeal between terminating a parent's rights or not is not a binary choice because, importantly, "adoption [is not] the only permanent option available to a child whose parent is unfit"); *see also M. H.*, 306 Or App at 162 (explaining that the statutory scheme does not contain any presumption or preference for adoption when the parent is found to be unfit). On *de novo* review, we conclude that the issue of guardianship was not developed in the trial court sufficiently for us to determine that guardianship, rather than adoption, was in the K's best interests. The evidence established that K needed permanency as soon as possible and should maintain his sibling bond with A. The evidence established that there were potential adoptive placements that would meet K's needs for permanency and would also be suitable adoptive placements for A. There was no evidence of a suitable guardianship placement for K and A.

We conclude that ODHS met its burden to establish by clear and convincing evidence that terminating father's parental rights to K is in K's best interests.

Affirmed.