

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-25-00396-CV

**IN THE INTEREST OF V.A.** and **L.A.**, Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA00434
Honorable Raul Perales, Associate Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice
Dissenting Opinion by: Lori Massey Brissette, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: November 26, 2025

The majority opinion sets forth the appropriate burden of proof at trial and the correct definition of "clear and convincing evidence"—that being "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam); TEX. FAM. CODE § 101.007. But, the majority—in its application of that standard—has failed to apply an appropriately heightened appellate standard of review necessary to protect the very important rights involved, rights of constitutional import.

The Texas Supreme Court, in *In re C.H.*, 89 S.W.3d 17, 23–27 (Tex. 2002), wrote at length about the need to apply a differentiated appellate standard of review in parental termination cases

that recognized the requirement at trial of evidence that is capable of clearly and convincingly proving the allegations supporting a termination petition. *See also In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (extending the clear and convincing standard to termination proceedings because of the constitutional interests at stake); TEX. FAM. CODE §161.001(1), (2) (codifying the clear and convincing standard). The court stated:

> Under the traditional factual sufficiency standards, a court determines if a finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *But that standard is inadequate when evidence is more than a preponderance (more likely than not) but is not clear and convincing.* As a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.

*C.H.*, 89 S.W.3d at 25 (citations omitted) (emphasis added). Later in the same year, addressing a legal sufficiency review, the Texas Supreme Court stated that "to apply our traditional no evidence standard of review in a parental termination case would not afford the protections inherent in the clear and convincing standard of proof." *In re. J.F.C.*, 96 S.W.3d 256, 265 (Tex. 2002). "In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence *is capable of producing a firm belief or conviction that the allegation is true.*" *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014) (emphasis added).

Relating to whether evidence "is capable of producing a firm belief or conviction," the court has referred to two cases: first, *Santosky v. Kramer*, 455 U.S. 745, 769 (1982), wherein the United States Supreme Court held that the clear and convincing standard should "convey[] to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process;" then, to its own opinion in *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979), wherein it held the clear and convincing standard is "that measure or degree of proof which will produce

in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." *C.H.*, 89 S.W.3d at 25.

In its efforts to describe a differentiated standard of review, the Texas Supreme Court was careful to avoid implying a standard "so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *Id.* at 26. But it did little to describe for courts of appeals how the new heightened appellate standard should be meshed with the deeply embedded principle that appellate courts are not to become "the thirteenth juror." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).[1]

Unfortunately, when one well-established and oft-repeated aspect of a sufficiency of the evidence review—that the factfinder is the sole arbiter of the credibility and weight to be given the evidence—is applied so literally that it effectively dilutes any attempt to apply a truly heightened appellate standard of review, courts of appeals end up narrowing their focus to determine instead whether there is *any evidence* to support the termination finding. *See J.F.C.*, 96 S.W.3d at 265. ("Requiring only "[a]nything more than' a mere scintilla of evidence does not equate to clear and convincing evidence."). "[A] standard of proof loses much of its value if a reviewing court does not apply sufficient scrutiny to enforce it. Due process in termination cases, as much as or more than other civil cases, depends upon 'the error-reducing power of . . . appellate review.' Applying

---

[1] In his concurrence to *C.H.*, Chief Justice Hecht recognized "it might become necessary" for the Texas Supreme Court to address the argument that a review of clear and convincing evidence in parental termination cases should be *de novo*, as the United States Supreme Court requires in defamation cases and punitive damages awards. 89 S.W.3d at 29 (Hecht, J., concurring). I do not advance that argument here. But, while the Texas Supreme Court expressly rejected the idea that the evidence—to be clear and convincing—must make the truth of the allegations "highly probable" because it believed it may complicate the standard of review, I would counter that just such clarification is sorely needed. *See C.H.*, 89 S.W.3d at 26; *see e.g. Conservatorship of O.B.*, 470 P.3d 41, 43–44 (Cal. 2020) (requiring clear and convincing evidence to make the truth highly probable); *see also In re Adoption of Baby Girl G.*, 311 Kan. 798, 806 (2020) (requiring evidence that makes allegations "highly probable"); *Dept. of Human Services v. T.L.M.H.*, 294 Or. App. 749, 750, 432 P.3d 1186 (2018), rev. den. 365 Or. 556 (2019) (same); *In re O.H.*, 154 Hawai'i 45, 544 P.3d 709 (Ct. App. 2024) (same). But, even without such clarification, I would hold the current standard as set forth by the Texas Supreme Court demands reversal here.

a more deferential standard in termination appeals dilutes that power."[2] Karen A. Wyle, *Fundamental Versus Deferential: Appellate Review of Terminations of Parental Rights*, 54 Res Gestae 13, 18 (May 2011) (quoting *Santosky*, 455 U.S. at 776 n.4 (Rehnquist, J., dissenting)); *see also K.M.L.*, at 112 (recognizing "termination proceedings must be strictly scrutinized").

While deference to the factfinder is paramount to our system of justice, the Texas Supreme Court has been clear that—to differentiate the heightened standard of review applicable to a case requiring clear and convincing evidence at trial—we are to make a threshold determination of whether the evidence presented at trial is of the type, in terms of credibility and weight, that *could reasonably produce* in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See K.M.L.*, 443 S.W.3d at 112–13 (holding the court of appeals must determine whether "the evidence *is capable of* producing a firm belief or conviction that the allegation is true.") (emphasis added); *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (recognizing the appellate court "take[s] into consideration whether the evidence *is such* that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof.") (quoting *J.F.C.*, 96 S.W.3d at 266) (emphasis added); *J.F.C.*, 96 S.W.3d at 265–66 ("A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding.").[3] In fact, just a few weeks ago, the Texas Supreme Court stated:

---

[2] Members of the Texas Supreme Court have recognized that trial courts are struggling with the standards involved in suits affecting parents and children. *See e.g., In re C.J.C.*, 603 S.W.3d 804, 821 (Tex. 2020)( J. Lehrmann, concurring) (writing separately to address the struggle in trial courts to properly apply the fit parent presumption). Appellate courts play an important role in helping trial courts navigate such challenging issues involving such important rights.

[3] Other states have also recognized the need for such a threshold determination on appeal. For example, in *Conservatorship of O.B.*, 470 P.3d 41, 51 (Cal. 2020), the court held "an appellate court must determine whether the evidence reasonably could have led to a finding made with the specific degree of confidence required by this standard." Therein, the court specifically stated that "[e]ven if evidence is capable of being regarded as 'credible,' reasonable,' and 'solid,' to amount to substantial evidence it also must be 'of ponderable legal significance.'" *Id.* (citing *In re Teed's Estate*, 247 P.2d 54, 58 (Cal. 1952)).

As future Chief Justice Pope explained for the Court nearly half a century ago, for example, "[a]ctions which break the ties between a parent and child can never be justified without the most solid and substantial reasons," and so, "in an action which permanently sunders those ties," the "proceedings [should] be strictly scrutinized."

*D.V. v. Tex. Dept. Family & Prot. Servs.*, —— S.W.3d ——, 2025 WL 3038976, *3 (Tex. Oct. 31, 2025). Because I do not believe the evidence in this case survives the required level of scrutiny, I respectfully dissent.

**GROUNDS FOR TERMINATION[4]**

The trial court terminated Father's parental rights under Texas Family Code section 161.001(b)(1)(D), (E), and (O).

### 1. Predicate grounds (D) and (E)

I would hold the evidence admitted at trial is legally and factually insufficient evidence to support termination on the bases that Father (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; or (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E).

The State relied on three pieces of "endangerment" evidence to seek termination of Father's rights. First, the caseworker recounted Mother's allegation that Father hit the child. Second, the Department relied on the fact that Father was in jail when the child needed to see a doctor for a potential urinary tract infection, necessitating the "removal" of the child to ensure appropriate

---

[4] "[I]f a court of appeals is reversing the jury's finding based on insufficient evidence, the reviewing court must 'detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support the termination finding by clear and convincing evidence." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 19). While I believe I do so here, I do not go into the level of detail I would if this dissent were instead the majority opinion of the court.

medical attention.[5] Finally, the Department testified that Father was arrested again a couple of months before trial for an allegation of sexual assault and that he admitted he'd been out drinking alcohol that night and couldn't remember what occurred.

First, with regard to the Department's testimony regarding Mother's allegations, the caseworker testified that Mother told the Department that she overheard her child crying, that Father was the only person in the room with the child, that the sounds of two slaps were heard and then the child started crying harder, and finally that EMS checked the child out afterwards. While this hearsay testimony came in without objection, no evidence was tendered to corroborate the allegations in any way. No EMS report. No interview of the child. And Mother chose not to attend the trial.[6] A second-hand allegation, by itself, is not evidence of the type capable of producing in a reasonable juror a firm belief or conviction of the truth of the allegations. Of particular concern is the fact that using such evidence to support termination does not call on us to defer to a factfinder, but actually outsources the credibility determination of the actual witness (Mother) to the caseworker—to whom we owe no fealty.[7]

Second, the Department asserted that Father endangered the children by being incarcerated when L.A. had a possible urinary tract infection while residing with Great Aunt and Great Uncle, a couple that are clearly not only adequate caretakers of the children but whom the Department asserts should be allowed to adopt them. Because the act of placing the children with Great Aunt

---

[5] The children in fact were never "removed." Instead, the children remained in the care of their Great Aunt and Great Uncle, where they were at the time Father was arrested and where they remain today while in the conservatorship of the State.

[6] The evidence established that Mother has a substance abuse problem, and Mother does not appeal the termination of her own parental rights herein.

[7] The caseworker also made the bald assertion that Mother "was the victim of domestic violence from [Father]" and Father's service plan alleged "a previous history of domestic violence." But no evidence was provided to substantiate these vague and conclusory assertions. *See In re B.R.*, 456 S.W.3d 612, 617–18 (Tex. App.—San Antonio 2015, no pet.) ("[C]onclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence[.]") (quoting *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.)).

and Great Uncle cannot constitute endangerment, the Department points to the fact that Father being in jail precluded them from getting medical care for L.A. But endangerment may not be inferred from incarceration alone. *See In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2001, pet. denied); *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment." *J.F.-G.*, 627 S.W.3d at 313. But, notably, no evidence was introduced as to why Father was in jail at the time or how long he had been incarcerated—not even whether he had simply been arrested or was serving a sentence post-conviction. The same goes for the fact that Father was arrested a couple months before trial for sexual assault. Again, there was no testimony substantiating the alleged incident, not even describing what allegedly occurred or even who the victim was. While evidently there was probable cause for an arrest, certainly a probable cause determination cannot be of the type of evidence to clearly and convincingly cause a reasonable juror to form a firm belief or conviction in the truth of the allegation.

Finally, the Department cast Father as having a substance abuse problem. But, the evidence presented demonstrated that Father tested negative on all random drug tests. And, while Great Aunt testified that Father has not accepted that he has an alcohol problem, no testimony was elicited that would establish he actually has one. The only evidence of alcohol use was the caseworker's testimony that Father admitted being too drunk on the night of the alleged incident leading to his arrest for sexual assault, a night on which he did not have the children in his care.

We cannot default to a "where there's smoke there's fire" conclusion based on the collective of the evidence presented, none of which individually is of the type that is capable of producing a firm belief or conviction in the truth of the allegations made. *See K.M.L.*, 443 S.W.3d at 112–13.

Thus, I would hold the evidence for these predicate grounds is both legally and factually insufficient. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25.

### 1. Predicate ground (O)

As well, there was legally and factually insufficient evidence here to support termination on former[8] predicate ground (O): failure to comply with a court order. *See* TEX. FAM. CODE § 161.001(b)(1)(O). Here, the evidence shows remarkable compliance with the service plan by Father. The conservatorship worker testified that prior to Father's arrest in March 2025, "he was more than halfway through all of his services." Father was successfully completing every aspect of his court-ordered service plan: engaging in all scheduled weekly visits with the children who were bonded to him and looked forward to his visits, testing negative on all random drug tests, actively engaging in Alcoholics Anonymous as required by the plan, nearing graduation in a twelve-week parenting course, more than half way through a domestic violence course, and engaging in therapy with positive reports from his counselor. Furthermore, Father was maintaining employment and had signed a lease for an apartment shortly before his arrest.

A reasonable factfinder could not form a firm belief or conviction that Father failed to comply with his court-ordered family service plan during this period. Therefore, the only remaining window of time that could possibly support termination on predicate ground (O) would be from March 2025 (when Father was arrested and held in jail) to the trial held less than two months later. But outside a statement that he had been arrested, the record is devoid of evidence relating to the incident or whether he was indicted or tried on the charge. The arrest itself does not suffice to support termination under (O). *See In re G.C.*, No. 02-17-00259-CV, 2018 WL 547784,

---

[8] (O) has since been deleted from Section 161.001(b)(1). *See* Act of May 14, 2025, H.B. 116, 89th Leg., R.S., ch. 211, § 2; *In re N.L.*, No. 02-25-00205-CV, 2025 WL 3008022, at *1 (Tex. App.—Fort Worth Oct. 27, 2025, no pet. h.).

at \*20 (Tex. App.—Fort Worth Jan. 25, 2018, no pet.) (Reversing termination of arrested Father's parental rights for factually insufficient evidence to support termination on predicate ground (O) "because Father was not actually charged with or convicted of having committed any crime by the time of the termination trial, and the record contains no other evidence about the arrest other than that it involved Katie and an alleged domestic violence incident[.]"). And, while there were statements that Father had been released from jail a few days prior to trial, when asked the caseworker testified she was unable to confirm his release. Furthermore, the service plan, which was written during Father's previous period of incarceration ending in November 2024, explicitly recognized the limitations incarceration poses and excused Father from completion of his employment and housing requirements until his release from jail.

In light of Father's impressive adherence to the family service plan from his release in November 2024 until his arrest in March 2025, something we unfortunately do not often see in these cases, a factfinder could not reasonably form a firm belief of conviction that Father must face the death penalty of civil cases based on a single unsupported claim by the Department about the reasons for his March arrest. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25; *see also In re A.Q.W.*, 395 S.W.3d 285, 290 (Tex. App.—San Antonio 2013, no pet.) (evidence insufficient to support termination under Subsection (O) where father was not given a reasonable opportunity to complete service plan following release from incarceration); *In re A.J.L.*, No. 04-14-00013-CV, 2014 WL 4723129, at \*5 (Tex. App.—San Antonio Sept. 24, 2014, no pet.) (mem. op.) (evidence not sufficient to support termination where parent had been complying with the service plan up until the time of incarceration); *see also* TEX. FAM. CODE § 161.001(b)(1)(P) (formerly (b)(1)(Q)) (termination can be based on incarceration for *at least two years* from date of filing petition, but only if parent is *convicted* of criminal offense).

The legislature deleted subsection (O) in response to the Texas Supreme Court's concerns, as set forth for example in *In re R.J.G.*:

> A judgment terminating parental rights is "the 'death penalty' of civil cases." *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) []. A court's decision to impose this penalty demands more than bureaucratic or mechanical box-checking. *See In re S.M.R.*, 434 S.W.3d 576, 584 (Tex. 2014) (rejecting the Department's argument that termination under (O) was conclusively established where the evidence showed imperfect compliance with the plan and noting that "[p]arents frequently fall short of strict compliance with a family-service plan's requirements"). Terminating the parent-child relationship for the parent's failure to comply with a court-ordered service plan necessarily requires a nuanced assessment of the parent's conduct and progress toward plan completion in light of the totality of the plan's requirements and overall goal. In determining whether the Department has established grounds for termination under (O), the trial court should consider the nature and degree of the parent's alleged noncompliance and the materiality of the disputed plan requirement in achieving the plan's stated goal.

681 S.W.3d 370, 381 (Tex. 2023). A reasonable factfinder conducting this nuanced assessment could not form a firm belief or conviction that the trial evidence supports termination under (O) here, when any material noncompliance with the service plan is based solely on a single unsupported assertion by the Department at trial that Father was arrested on an allegation that has yet to be proven and which was not detailed in any way at trial.

It would be especially concerning for us to affirm termination on the evidence presented, using subsection (O) as the only ground, after the legislature has deleted that provision from Texas Family Code section 161.001(b)(1). *See* Act of May 14, 2025, H.B. 116, 89th Leg., R.S., ch. 211, § 2. I would hold the evidence was legally and factually insufficient to support termination under (O).

**CONCLUSION**

"[I]n parental-termination proceedings, [the Department's] burden is not simply to prove that a parent should not have custody of [his] children; [the Department] must meet the heightened burden to prove, by clear and convincing evidence, that the parent should no longer have any

relationship with [his] children whatsoever." *In re K.N.J.*, 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.); *see also In re J.A.J.*, 243 S.W.3d 611, 616–17 (Tex. 2007); *In re J.J.R.S.*, 627 S.W.3d 211, 223 (Tex. 2021) ("The Family Code . . . does not require termination when a severe restriction or limitation on access can also be in the best interest of the child while preserving the possibility that a parent and child may continue to have a relationship in the future."). Because the evidence does not meet the threshold beyond which a factfinder could reasonably form a firm belief or conviction that Father committed acts sufficient to support termination under Texas Family Code subsections 161.001(b)(1)(D), (E), or (O), I would reverse and remand for determination of conservatorship. *See* TEX. FAM. CODE § 263.404 (requiring the trial court, where parental rights are not terminated, to place the child in the conservatorship of a parent, a relative of the child, or another person unless it is not in the child's best interests to do so).

Lori Massey Brissette, Justice