Submitted July 27, reversed November 10, 2021

In the Matter of B. L. S. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. E. P.,
aka D. P., aka D. P. L.,
*Appellant.*

Jackson County Circuit Court
20JU02133; A175362

502 P3d 764

Mother appeals from a juvenile court judgment terminating parental rights to her child, B, who was nearly nine years old at the time of the termination hearing. On appeal, she challenges the juvenile court's finding, necessary to its judgment, that termination of her parental rights was in B's best interest. *Held*: Given B's attachment to mother and the availability of permanent guardianship, the juvenile court erred in finding that terminating mother's parental rights was in B's best interest.

Reversed.

Timothy C. Gerking, Judge.

G. Aron Perez-Selsky filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed.

**ORTEGA, P. J.**

Mother appeals from a juvenile court judgment terminating parental rights to her child, B, who was nearly nine years old at the time of the termination hearing. On appeal, she challenges the juvenile court's finding, necessary to its judgment, that termination of her parental rights was in B's best interest. Given child's attachment to mother and the availability of permanent guardianship, we conclude that the juvenile court erred in finding that terminating mother's parental rights was in B's best interest. Accordingly, we reverse the judgment of termination.

We review the facts *de novo*, ORS 19.415(3)(a), and we recount only those facts necessary to give context to our ruling. The juvenile court took jurisdiction of B and her two older siblings nearly two years before the termination trial, when B was seven years old. During those nearly two years, B has been in a stable foster placement. As mother does not contest, B has thrived in that placement and is bonded to her foster mother, Morgan, who would like to adopt B.

Mother has a history of problematic drug use and is a victim of domestic violence, and B was removed from the home as a result of those issues. Mother's drug use resulted in arrests, criminal convictions, periods of incarceration, and a term of probation. She started drug treatment several times with minimal success. Throughout the life of the case mother was in and out of a relationship with her abuser and was in communication with him within the week before the termination hearing. Mother acknowledged at the hearing that she was not yet in a position to be a custodial resource for B but felt that she could be ready within six months. She also stipulated to the allegation that she was "unfit by reason of conduct or conditions seriously detrimental to the child," but asserted that terminating her parental rights was not in B's best interest.

Mother participated in visits with B while the case was pending, although she missed visits for months at a time, which was troubling for B. B also had regular contact with her siblings, who were in a different placement. There was no dispute among the trial witnesses that B and her siblings were all strongly bonded to mother and desired

to live with her. Although the majority of witnesses recommended adoption, they all recognized that maintaining a relationship with mother would be beneficial to B. The DHS permanency worker, Rouhier, testified to having confidence that Morgan would encourage a relationship between B and mother even after adoption, and Morgan affirmed that intention.

With regard to permanency, the testimony of key witnesses does not reflect an accurate understanding of a permanent guardianship as a placement option that would be permanent. Morgan testified that she wants to adopt B because she believes B deserves permanency and a place where she belongs, but also acknowledged that no one had explained to her, and she did not understand, the difference between a guardianship and a permanent guardianship. Dr. Munoz, who evaluated B, testified that psychologists do not recommend adoption or guardianship, but rather offer descriptions of conditions that a child needs. He explained that he was not using the word "adoption" but opined that the "best plan for [B] is the one that can provide her with the most durability, consistency, and predictability." Rouhier testified that she recommended adoption because of concerns with delays from permanency and because adoption "gives children the highest level of permanency and *** every child thrives in the highest level of permanency." Rouhier expressed the understanding that mother could continually challenge any guardianship and that the caregivers would be required to defend it.

Although the juvenile court stated its intent to focus on the best interest of B, its ruling focused more on mother's faults. The court stated:

"I do find there's a need for durability, consistency and predictability. I do find that mother is not credible. She has admitted that she exposes her kids to unsafe people. ***

"There was also testimony about adoption being the strongest form of permanency or termination. I'm not ordering adoption. The child's obviously adoptable. And concerns about the posture about setting up a contested guardianship. But I think more telling from what the State argued in rebuttal was that the child's attorney is saying that adoption is in the child's best interest.

> "I do find that [the child's attorney] is correct in that [B] does love both moms. I do find that she has stated that there is a preference, but *** she's an eight year old. *** It's my decision. And looking at this through the lens of best interests, I absolutely find that it's in her best interest to proceed to termination, and it's been proven by clear and convincing evidence. [B] does have anxiety. She is vulnerable. She has blossomed in *** foster care."

The court went on to discuss mother's codependency issues and her "dual diagnosis" in the context of mental health and addiction. It clarified, "I'm not terminating her parental rights because she's a victim of domestic violence, I'm terminating her parental rights because it affects [B]." The court continued that B "needs a caregiver with skills necessary to access services and children do best in the permanent placement." It concluded,

> "[mother's] aspirations, you know, her aspirations should not rule over what is in [B's] best interest. I agree that the relationship with the birth mother is beneficial, but there is just no way, given the testimony and the evidence that was presented, that I don't think that termination of Mom's parental rights would be in her best interest."

On appeal, mother argues that termination of her parental rights is not in B's best interest because (a) B is strongly bonded to mother and would suffer serious loss if their relationship was severed; (b) there is no evidence that mother ever subjected B to cruelty or abuse; (c) B's psychologist and permanency caseworker both testified that she would benefit from continuing her relationship with mother, and termination jeopardizes that relationship; and (d) there is no evidence that a permanent guardianship could not be implemented.

DHS counters that the trial court did not err in finding that termination was in B's best interest. According to DHS, despite B's undisputed attachment to mother, she has high needs and requires stability and permanency. DHS maintains that adoption "will enable [B] to maintain her relationship with mother, while also giving her the safety, stability and permanency that mother is unable to provide." It contends that there "is every reason to believe that mother would not agree to a permanent guardianship,

she would attempt to disrupt it, and it would not provide [B] with the stability she needs."

Parental rights may be terminated under ORS 419B.500 only upon a finding that it is highly probable that doing so is in the particular child's best interests. *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018), *rev den*, 365 Or 556 (2019). DHS must make that showing by clear and convincing evidence. *Id.* Reviewing *de novo*, we "examine the record with fresh eyes to determine whether the evidence developed below persuades us that termination is in [the child's] best interests." *Id.*

It is well established that a permanent guardianship is a permanent arrangement that may not be challenged by a parent and that adoption is not the only means of fulfilling a child's need for permanency. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 165, 442 P3d 1100 (2019) (noting that a permanent guardianship may only be vacated on the court's own motion or on the motion of a party other than a parent, and then only in the child's best interests); *see also Dept. of Human Services v. M. H.*, 306 Or App 150, 164, 473 P3d 1152, 1159 (2020) (rejecting the notion that permanency can only be achieved through adoption and concluding that courts "do not assume that severing a child's legal relationship with a legally unfit parent is necessary to that child's best interest without evidence"); *Dept. of Human Services v. D. F. R. M.*, 313 Or App 740, 745, 497 P3d 802 (2021) (concluding the same and finding that the record lacked clear and convincing evidence that child's best interests demanded that mother's relationship with the child should be legally severed). Thus, we reject DHS's oft-repeated argument, in this and other cases, that adoption is the "most permanent option"; all permanent options are permanent for these purposes, and the assumptions of various witnesses and the juvenile court in this case about mother's ability to disrupt a permanent guardianship are incorrect.

We conclude that the juvenile court erred in deciding that DHS had met its burden to establish by clear and convincing evidence that termination of mother's parental rights is in B's best interest. In reaching that conclusion, we reject the premise underlying the juvenile court's

determination, that permanency can only be achieved by terminating mother's parental rights. As the Supreme Court explained in *T. M. D.*, and as we emphasized in *M. H.*, 306 Or App at 164, a permanent guardianship is not a temporary arrangement, and DHS's contention that there is reason to believe that mother would disrupt a guardianship is based on a false premise.

Moreover, as all witnesses acknowledged, B is attached to mother, and maintaining a relationship with mother is important to B's well-being. We give significant weight to the importance of preserving a child's relationship with her biological parent where that is possible to do consistent with her best interests. *See D. F. R. M.*, 313 Or App at 746. Here, the record lacks clear and convincing evidence that B's best interests require severance of mother's legal relationship with her so that any further contact is entrusted entirely to the good will of an adoptive parent. Although DHS and the court appear to have assumed that B's proposed adoptive parent would allow further contact, that does not substitute for the required evidence that B's best interest requires termination of mother's parental rights; it is the court's responsibility to protect a child's best interests, not to assume that the child's future adoptive parents will do so, especially armed with a court finding that the child's best interest requires termination of the child's legal relationship with the biological parent. *Id*. at 746-47. We conclude, on *de novo* review, that DHS failed to establish, by clear and convincing evidence, that termination of mother's parental rights is in child's best interest.

Reversed.