No. 19 January 2, 2025 307

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M. K. F.,
*Appellant.*

Lane County Circuit Court
22JU05418;
A184241 (Control)

In the Matter of M. M. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M. K. F.,
*Appellant.*

Lane County Circuit Court
23JU00830;
A184242

Amit K. Kapoor, Judge.

Argued and submitted October 4, 2024.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

In this consolidated juvenile dependency case, mother appeals from juvenile court judgments changing the permanency plan for her two children, M and D, from reunification to adoption. Mother raises eight assignments of error, relating to four issues—one error for each child for each issue.[1] In the first four assignments, mother argues that the juvenile court erred in determining that the Department of Human Services (DHS) made reasonable efforts to reunify mother with her children, and for that reason, the court erred in changing the permanency plan away from reunification. In the fifth through eighth assignments of error, mother challenges the court's finding that there was no compelling reason to forgo adoption, and for that reason, the court erred in changing the permanency plan to adoption, rather than another approach such as guardianship. We conclude that mother's challenge to the reasonableness of DHS's efforts was not preserved and that any error is not plain. Mother argues in the alternative that her counsel was constitutionally inadequate in failing to develop the argument, but we determine that the record is inadequate on that point and affirm without prejudice to mother's ability to renew her argument in the juvenile court. We conclude that the juvenile court did not err in finding that DHS made reasonable efforts to reunite mother with children, or in changing the permanency plan for both children away from reunification. Although there was a strong sibling bond between D and M, the juvenile court did not err under the circumstances when it found that there was no compelling reason to forgo adoption and implemented a permanency plan of adoption. We thus affirm.

Absent *de novo* review, which mother does not seek, "we review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). "Where findings on disputed issues of fact are not made but there is evidence supporting more than one possible factual conclusion, we presume that

---

[1] Father is not a party to this appeal.

the juvenile court decided the facts consistently with its ultimate legal conclusion." *Id*. at 345. "Ultimately, we review the facts found by the juvenile court to determine whether they are supported by any evidence and then to determine if, as a matter of law, those facts provide a basis for the juvenile court's change of the permanency plan * * *." *Id*. We address the facts with the standard of review in mind.

Doctors diagnosed D with cancer in September 2022, when she was one year old. The same day, mother overdosed on pills in D's hospital room, which led to DHS involvement. DHS removed D from mother's care in November 2022, and placed her in foster care with a registered nurse who could manage D's health needs. D will need continuing chemotherapy treatment through at least the fall of 2025, and extensive support in dealing with the side effects.

The juvenile court took dependency jurisdiction over D in February 2023, when she was then two years old, based on four jurisdictional bases that mother admitted interfered with her ability to safely parent: (1) mother's substance abuse, (2) mother's residential instability and chaotic lifestyle, (3) mother's inability to provide for D's special medical needs, and (4) mother's inability to protect D from father's domestic violence.

Mother was initially diligent in visiting D at the hospital, and DHS worked to get mother into inpatient drug treatment, which began at the end of February 2023. But mother was discharged after just five days of treatment due to continuing drug abuse, including in the presence of M. In April 2023, the court took jurisdiction over M, then four years old, on the sole basis that mother's substance abuse, which exacerbates her mental health, interfered with her ability to safely parent M. In April 2023, DHS again connected mother with substance abuse resources, this time putting her on a waitlist for a medical detox facility. To stay on the facility's waitlist, mother was required to regularly call the facility to keep her spot. DHS gave her a phone to achieve that end. DHS also provided gas cards, bus passes, and taxi services to ensure that mother could continue to see D at the hospital.

During the visits at the hospital, DHS facilitated the presence of both M and mother. D did not "engage in a loving way toward" mother, but reacted well towards M. M in turn reacted well to D and was "very gentle with D and gives [her] lots of affection." Even after mother stopped showing up at hospital visits, DHS continued to schedule visits with just D and M. The sisters "share[d] a close bond and attachment." The Court Appointed Special Advocate (CASA) testified that they believed that it was important "to do everything possible to ensure [D and M] are placed together."

Mother continued to struggle with substance abuse issues. A DHS caseworker testified that mother had lost her spot on the waiting list for a placement with the detox facility because she had failed to regularly call the facility, despite being repeatedly instructed to do so by DHS. By February 2024, mother had made no progress on addressing her substance abuse and was not then in treatment. At that time, DHS referred mother to the "Addiction Recovery Team." By the time of the April 2024 permanency hearing, mother had still made no progress on entering treatment, and mother did not attend the April hearing.

Initially, the juvenile court ordered a permanency plan of reunification. At the contested hearing in April 2024, with counsel for mother, children, and DHS present, the court ordered a change of the permanency plan to adoption and in accordance with ORS 419B.498 ordered DHS to file petitions to terminate mother's parental rights. Mother timely appealed from those judgments.

Mother argues on appeal that DHS failed to make reasonable efforts to help with her drug abuse, and that as a result, changing the permanency plan was improper. Mother argues in the alternative that even if the change of permanency plan was proper, the change to adoption was itself improper because of the strong sibling bond between D and M. We first address reasonable efforts.

When the permanency plan at the time of a permanency hearing is reunification, the juvenile court is authorized to change the plan away from reunification only if

DHS proves that "(1) it made reasonable efforts to make it possible for the child to be reunified with his or her parent" and "(2) notwithstanding those efforts, the parent's progress was insufficient to make reunification possible." *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017); ORS 419B.476(2)(a). "The juvenile court's determinations whether DHS's efforts were reasonable and the parent's progress was sufficient are legal conclusions that we review for errors of law." *Dept. of Human Services v. G. N.*, 263 Or App 287, 294, 328 P3d 728, *rev den*, 356 Or 638 (2014).

Mother did not preserve her argument that DHS had failed to make reasonable efforts. *See Dept. of Human Services v. J. L. J.*, 315 Or App 87, 92, 501 P3d 82 (2021), *rev den*, 369 Or 209 (2022) ("[A] party must provide the trial court with an explanation of [their] objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately."). Although mother's counsel noted that "more time is needed to assist her," she conceded that mother was "significantly struggling," and otherwise did not develop an argument for how DHS had failed to help her, or what more was to be done. That was insufficient to preserve an argument that DHS failed to make reasonable efforts.

Mother argues, alternatively, that if we conclude the issue is unpreserved, the court committed plain error. An error is plain if it is "an error of law, obvious, and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). We conclude that any error is not obvious nor beyond reasonable dispute. As the juvenile court found, DHS went to considerable efforts to get mother into treatment, connecting her with services multiple times. In placing mother onto a waitlist for medical detox treatment, the department gave her a phone[2] and a number to call to keep her on the waitlist, and repeatedly told her that she had to call to keep herself on the list. After mother lost her spot on the waitlist, and two months before the permanency hearing, DHS again reached

---

[2] DHS presented evidence that it provided a total of three phones to mother.

out to mother to connect her with addiction services, which were again unsuccessful. The record is sufficient to support the juvenile court's determination that DHS's efforts were reasonable. DHS does not need to "provide *every* service that conceivably could benefit a parent, regardless of expense or other burdens." *Dept. of Human Services v. M. K.*, 257 Or App 409, 417-18, 306 P3d 763 (2013) (emphasis in original). We thus conclude that it is not obvious or beyond dispute that the juvenile court erred in concluding that DHS had made reasonable efforts. Plain error review is therefore not warranted.

In the alternative, mother argues on appeal that her counsel was ineffective for failing to develop or preserve the argument. Mother did not raise a claim of ineffective assistance of counsel at trial but raises one now. Such a claim may be raised for the first time on direct appeal in certain circumstances. *Dept. of Human Services v. T. L.*, 358 Or 679, 703, 369 P3d 1159 (2016) (parent could challenge attorney's failure to show for a change of permanency plan hearing).

To be entitled to relief on such an argument, "a parent must show not only that trial counsel was inadequate, but also that the inadequacy prejudiced the parent's rights to the extent that the merits of the juvenile court's decision are called into serious question." *Id.* at 702. Here, mother has failed to take advantage of ORS 419B.923 (allowing for the modification or setting aside of juvenile judgments) to press this claim in the trial court. Mother also, understandably, did not develop the record as to how her counsel was inadequate. The record, therefore, is insufficient for us to grant relief on this basis. *T. L.*, 358 Or at 703 (we may affirm without prejudice if ORS 419B.923 has not been followed and the record is insufficient). On this record, and in this circumstance, we thus affirm without prejudice to mother's ability to renew the claim of inadequate assistance of counsel before the juvenile court.

We now turn to mother's argument that guardianship, or another approach, was a more appropriate plan than adoption. Mother contends that the sibling bond between D and M is a "compelling reason" to forgo adoption under ORS 419B.498, which provides, in relevant part, that:

"(2)   The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"* * * * *

"(b)   There is a *compelling reason*, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"* * * * *

"(B)   Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's *sibling attachments and relationships*[.]"

(Emphases added.) The party opposing a change of plan (in this case mother) bears the burden of proof to show a compelling reason exists. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 55, 430 P3d 1021 (2018).

"Whether a 'compelling reason' exists is a legal question, but one dependent on factual findings. Thus, the question before us on review is * * * whether there was evidence in the record to support the juvenile court's findings of fact upon which its conclusion in each case that there was not a compelling reason' was based."

*Id.* at 56-57.

DHS concedes that the siblings have a strong bond to each other. But DHS argues that mother bears the burden of proof to show that a remedy short of adoption would be more likely to preserve the sibling relationship. *See id.* at 55. DHS points out that the siblings are not currently living together, because D requires significant medical care, which is being provided by a registered nurse as a resource parent who cannot take on another child. In short, DHS claims that a dual placement is no less likely with adoption than with a guardianship or other placement. At any rate, DHS argues that mother has the burden of proof to show that a nonadoptive placement would be more likely to preserve the sibling bond and contends she has not met that burden.

Mother argues that the adoption of the children would sever their legal relationship to each other, and thus

risk their emotional bond. Termination of parental rights (TPR) between a parent and a child does terminate the legal relationship between the child and other siblings. *Dept. of Human Services v. M. A. N.*, 303 Or App 600, 612, 464 P3d 506 (2020). But siblings may be kept together even when their legal relationship is terminated. *See Dept. of Human Services v. D. F. R. M.*, 313 Or App 740, 744, 497 P3d 802, *rev den*, 368 Or 702 (2021) (ensuring that a younger sibling remained in a guardianship with the same family that adopted his two older siblings to whom he was bonded). Although the court here did order DHS to *petition* for a termination of parental rights, that is not the same as an actual termination. At any rate, we agree with DHS that there are unusual circumstances here due to D's cancer treatment, and that mother still bears the burden of proof, unlike in a TPR case. In that context, the uncertainty weighs against mother.

Mother relies on *Dept. of Human Services v. D. E. P.*, 315 Or App 566, 571, 502 P3d 764 (2021) in support of her argument that a court must preserve a child's best interests, and not presume that future adoptive parents will do so. We agree that a court must always act in the best interests of a child, but *D. E. P.* is not controlling here. In *D. E. P.*, we reversed, on *de novo* review, a permanency plan of adoption based on the child's attachment to the parent. *Id.* We noted that there was already significant contact and bond between the child and the parent, and that although the adoptive parent might have allowed further contact, we would not assume that the adoptive parent would do so. *Id.* The rationale from *D. E. P.* might have more significance here if D and M were in a dual placement and the court was separating them. But D and M are already in separate placements due to D's medical needs, and so the best interests analysis is necessarily different than in *D. E. P.*

Mother is correct that adoption would end the siblings' legal relationship, and that they might not be adopted together. But DHS responds, as noted above, that the siblings are no more likely to be kept together under a guardianship, and that they are in fact not currently together due to D's cancer treatment. That is, it is not the nature

of the permanency plan that may cause the siblings to be separated, but rather the degree of D's progress with cancer treatment. DHS points out that after the end of D's cancer treatment, which would be no sooner than the fall of 2025, the siblings could be together again. DHS contends that it is diligently attempting to find an adoptive placement that will take both D and M.

In that context, the juvenile court's conclusion that mother failed to show that adoption was any less likely to result in the preservation of D and M's sibling attachment was not legal error. In turn, the juvenile court did not err in determining that there were no compelling reasons to forego adoption and did not err in changing the permanency plan to adoption.

Affirmed.